**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

**WYNONA M. THACKER,**

     **Plaintiff,**

**vs.**                                        **CASE NO. 1:06CV109-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

     **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

     This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act.

     Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**     **PROCEDURAL HISTORY**

     Plaintiff filed an application for DIB on January 10, 2002, alleging a disability onset date of January 5, 2000, because of low back pain, status post two surgeries with epidural steroid injections, and diabetes. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on September 22, 2004, and

entered an unfavorable decision on July 26, 2005.  The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner.  This action followed.

**B.**   **FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had diabetes, obesity, sacroilitis, left spondylosis, and radiculitis, which were severe impairments within the meaning of the Act, but which did not meet any of the Listings of Impairments.  (R. 34).  The ALJ found that Plaintiff did not have a severe mental impairment because it posed no significant functional limitations, and she was not being treated or taking medications for it.  (R. 38).  Thus, the ALJ found Plaintiff capable of performing light work.  (R. 38).  Her past relevant work as an apartment manager was light work, and therefore, she could return to her past relevant work and is not disabled.  (R. 39).  The ALJ also found that Plaintiff had been urged to lose weight, had been given a written diabetic diet and exercise plan, and although she had lost some weight she was still morbidly obese, this contributed to her diabetes, and she admitted that she was not using any reliable weight loss method.  (R. 43).  The ALJ also found her to be non-compliant with prescribed treatment in that she had been told to quit smoking and had not done so.  (R. 48-49).  The ALJ, however, did not find her to be disabled, and therefore, did not need to reach the issue of non-compliance on either the weight or smoking issue.  (R. 43, 50)

**C.**   **ISSUES PRESENTED**

Plaintiff argues that the ALJ erred in not finding her mental impairment severe, and that his decision was "colored" by her non-compliance with a prescribed medical treatment.

**No. 1:06CV109-MMP/AK**

The Commissioner responds that Plaintiff failed to provide evidence that she was ever treated nor complained of a mental impairment prior to her date last insured of December 31, 2000.  Even the diagnosis by her treating physician of depression was not accompanied by any limitations and Plaintiff was given samples of an anti-depressant, not a prescription, and she did not follow up for treatment for ten months. Even Dr. Clifton, whose opinion she relies upon, did not examine her until December 6, 2004, nearly 4 years after her insured status expired.  The Commissioner also responds that the ALJ properly considered Plaintiff's weight and her continued smoking as credibility factors.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It

**No. 1:06CV109-MMP/AK**

is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education,

**No. 1:06CV109-MMP/AK**

and work experience, engage in any other kind of substantial gainful work which exists

in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in

five steps:

1.     Is the individual currently engaged in substantial gainful activity?

2.     Does the individual have any severe impairment?

3.     Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.     Does the individual have any impairments which prevent past relevant work?

5.     Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation

unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps

him from performing his past work.  If Plaintiff establishes that his impairment keeps him

from his past work, the burden shifts to the Commissioner at step five to show the

existence of other jobs in the national economy which, given Plaintiff's impairments,

Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986);

MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner

carries this burden, Plaintiff must prove that he cannot perform the work suggested by

the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within

the district court's discretion to affirm, modify, or reverse a Commissioner's final

**No. 1:06CV109-MMP/AK**

decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659,

676 (11th Cir. 1990).

E.    **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

    Plaintiff is not insured for benefits after December 31, 2000.  (R. 112-113).

    Plaintiff injured her back at work on January 5, 2000, for which she received

medication and physical therapy for 2 days.  (R. 181).  She sought treatment from the

Spine and Sports Medicine Specialists on March 7, 2000, when the pain continued and

an MRI revealed a "small left L5-S1 HNP...[and] foraminal stenosis along the left at L5-

S1."  (R. 182).  It was recommended that she receive epidural steroid injections and

return to work with no loading or lifting.  (R. 182).  She returned on March 9, 2000,

stating that the driving to work caused her severe pain and she was "placed off work"

and given an epidural injection.  (R. 180).  She had a reaction to the epidural, but

declined surgery.  (R. 177).  She maintained that she could not return to work.  (R. 177).

In May 2000, she returned with continued pain, but declined surgery and requested

additional physical therapy.  (R. 174-175).  One month later she noted improvement

with therapy and home exercise, but was counseled by her physician that some of the

examination findings caused concern and he "counseled her on immediate smoking

cessation," as well as "surgical decompression."  (R. 173).  On July 11, 2000, she was

referred to Dr. Stevenson for surgery and "again recommended smoking cessation."  (R.

170-171).

**No. 1:06CV109-MMP/AK**

On October 17, 2000, she had a laminectomy performed by Dr. John Stevenson (R. 185-189).  At the time of the surgery she was overweight, smoking two packs of cigarettes a day, and taking no anti-depressants.  (R. 189).  His treatment notes show that she presented to him first on July 31, 2000, upon referral by Dr. Lord.  (R. 255).  She was deemed totally disabled at that time.  (R. 259).  At her follow-up appointment on November 15, 2000, she reported "significant reduction in her leg pain," and "doing well."  (R. 253).  However, by January 15, 2001, she was having more pain and another MRI was scheduled.  (R. 252).  The results showed no nerve root compression, and it was considered to be "chronic radiculopathy," for which she underwent an epidural steroid injection on March 15, 2001, (R 248), April 2, 2001 (R. 247) and April 17, 2001. (R. 246).  On May 4, 2001, she had continued left hip pain and a lumbar CT myelogram was ordered.  (R. 245).  She had the procedure on May 21, 2001, which showed "moderate foraminal stenosis" with "potential for L5 nerve root impingement," but no nerve impingement elsewhere or disc protrusion.  (R. 243-244).  Dr. Stevenson scheduled a nerve root block and possibly a re-exploration of the same level if the block did not produce more than temporary relief.  (R. 242).  The nerve block was done on July 6, 2001 (R. 241), but produced relief for only a few days.  (R. 240).  At a September 26, 2001, visit she was 16 days post-op and reported resolution of her hip and groin pain, (R. 238), but by October 26, 2001, the back pain had returned.  (R. 236).  She was referred to the pain management clinic and found to be totally disabled, but not at maximum medical improvement.  (R. 236).  A lumbar myelogram taken on February 7,

2002, revealed post surgical changes with findings suggestive of epidural fibrosis, moderately severe left L5-S1 forminal narrowing with degenerative disc changes in the same area, and very mild acquired spondylostenosis at L3-L4 and L4-L5.  (R. 231). She was still found totally disabled to work at this time.  (R. 229).

On September 11, 2001, she was admitted for re-exploration of the lumbar laminotomy and was overweight, smoking two packs of cigarettes a day, and taking Celexa, which is an anti-depressant.  (R. 190-200).

Treatment notes of Dr. Beverly Heinking show that as of January 4, 2001, Plaintiff was diagnosed with depression and given diet counseling.  (R. 209).  It does not appear that she sought treatment from Dr. Heinking again until October 22, 2001, at which time she reported that she was taking no medications, was not watching her diet or controlling her diabetes, and her husband had just left her so she was crying.  (R. 203).  She was given medications for diabetes and Prozac.  (R. 203).  She returned on November 26, 2001, and reported that she was "less depressed," but she was told to stop smoking and her diet was discussed.  (R. 202).  On January 28, 2002, she was advised to follow a 1500 calorie diet, do a monthly weigh in, and take her prescriptions. (R. 201).  Exercise, diet, and smoking cessation were discussed frequently.  (R. 279-294, 303, 306).  It was also noted periodically that she was non-compliant concerning her diabetes.  (R. 280, 282, 294, 290).

The results of a comprehensive vocational rehabilitation report dated February 12, 2002, is that Plaintiff can perform light work with occasional lifting up to 20 pounds,

**No. 1:06CV109-MMP/AK**

sitting 2.6 to 5.5 hours a day, standing up to 2.5 hours, no climbing, squatting or crawling.  (R. 217-228).

Two Physical RFC's are in file dated May 2, 2002, and September 11, 2002, both assessing her as capable of light work with only occasional postural limitations.  (R. 263-278).

A consultative examination by Dr. Timothy Walker on April 8, 2004, included a medical source assessment of work related abilities, which also assessed her as capable of light work.  (R. 298-301).  Dr. Walker found no evidence of radiculopathy or paravertebral muscle spasm, found no atrophy, her range of motion was normal, and her abilities to get up from his table, a chair, to heel and toe walk, to squat, were not compromised, and that her use of an assistive device was inconsistent and unwarranted in that she used it on her weak side.  (R. 296-5-297).

Dr. Russell Clifton examined her mentally on December 6, 2004, and found her to be experiencing a significant depressive episode, although she has relatively few physiological signs of depression.  (R. 308-316). Dr. Clifton believed he obtained a valid profile from her and that she would make work adjustments poorly in a number of areas, and should not work with the public.  (R. 315-316).

## F.    SUMMARY OF THE ADMINISTRATIVE HEARING

Plaintiff appeared at the hearing with her attorney.  (R. 317).  Her problems began when she injured her back at work in January 2000.  (R. 319).  She has had three back surgeries since then and now her knee is giving out.  (R. 321).  She rides an

No. 1:06CV109-MMP/AK

electric wheel chair to do her shopping, cooks and does a little cleaning at home, and walks with a cane outside the home. (R. 323). She can walk with pain, but it gets worse the longer she tries to walk, and she can sit, but only 20 to 30 minutes in a straight up chair. (R. 323). She is able to bend, can lift about 7 pounds, can walk up four stairs, and cannot reach. (R. 324). When asked, she admitted to two cigarettes a day, and about ten a day the year before. (R. 327). She also admitted to being told to quit smoking and that it would inhibit healing after her surgery. (R. 328). She also admitted to being told to diet and that she had been following it and had lost from 315 to 270 pounds. (R. 330). Her ideal weight is 155. (R. 329).

**G.     DISCUSSION**

       a)     Mental impairment

       Plaintiff argues that there was not substantial evidence to support the ALJ's decision that her depression and anxiety were not severe, specifically, that she had not been treated by a mental health professional or taken medication. The ALJ relied on the report of Dr. Clifton, with the exception of his finding that Plaintiff was completely unable to work with the public, and Plaintiff argues that the ALJ did not explain why he did not accept this finding.

       Plaintiff must show that her mental condition was severe at the date she was last insured for benefits (December 31, 2000), and the only treatment notes around this time period shows that Dr. Heinking found her to be depressed in January 2001, gave her some medication samples, and ten months later in October Plaintiff reported back to her

**No. 1:06CV109-MMP/AK**

that she was taking no medications for depression, i.e. she did not come back for a prescription and sought no other treatment for her mental condition which is not persuasive that her condition was severe in December 2000.  Absence of treatment indicates that a mental impairment is not severe.  Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992).  It is not relevant to the determination what Dr. Clifton's opinion about her condition was in 2004, and he does not offer an opinion as to how long she may have had depression and certainly does not address the ultimate issue which is whether or not her condition and the limitations therefrom were, in his opinion, present in December 2000.

Further, Plaintiff did not allege depression as a cause of her inability to work in the applications for disability.  (R. 138-143, 155-164).  Failure to allege a mental impairment during the application process undermines the credibility of a mental impairment.  Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).  Thus, there was ample support for the ALJ's finding that Plaintiff's depression was not severe at the time she was last insured for benefits.

   b)    Failure to follow prescribed treatment

Plaintiff argues that the record does not support the finding by the ALJ that she had been urged to lose weight, but that she had not followed a prescribed diet and exercise plan.  In fact, she testified that she had lost from 315 pounds to 270 pounds. Plaintiff is correct that the record supports some weight loss, and the ALJ noted this in his opinion.  (See R. 43).  However, what he also noted was that she continued to be

No. 1:06CV109-MMP/AK

over 100 pounds overweight, was considered morbidly obese, and that this contributed

to her diabetes.  (R. 43).  Thus, the ALJ found that she had failed to comply with

prescribed medical treatment, i.e. that she lose more weight and quit smoking entirely.

Plaintiff seems to take the position that she lost some weight and quit smoking as much

as she was and she is therefore compliant.  Obviously, the ALJ disagreed.  Fortunately,

the Court does not have to decide the issue because the ALJ, citing applicable case

law, found that whether or not she was compliant with the prescribed treatment plan

would have no bearing on her ability to work, she could work at her past relevant work

even smoking and overweight.  (See R. 40-48).  Thus, compliance is not at issue.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this   _18th_ day of July, 2007.


*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**


**No. 1:06CV109-MMP/AK**